IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN D. LYONS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 3:07-0997 |
| | )    Judge Trauger |
| PSC METALS, INC., | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## MEMORANDUM

Pending before the court is the defendant's Motion for Summary Judgment (Docket No. 11.) For the reasons discussed herein, the defendant's Motion for Summary Judgment will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The defendant buys, sells, and processes scrap metal and owns a facility in Nashville, Tennessee, where, at the time this controversy arose, there were two welders -- the plaintiff, who is black, and Bryan Capps, who is white.[1] At the time this controversy arose, Capps was paid

---

[1] Unless otherwise noted, the facts are drawn from the parties' summary judgment briefs (Docket Nos. 16, 17, and 18), the Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Docket No. 17 Ex. 1) and related affidavits and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

$21.37 per hour, and the plaintiff was paid $18.46 per hour.[2]

The plaintiff is a long-time welder. He learned to weld in 1970 when he was sixteen, and, after that, he participated in a two-year vocational course with the Job Corps to enhance his skill set and to obtain various welding certifications. By 1986, he had also acquired eight years of professional welding experience. Since 1986, the plaintiff has been continuously employed doing welding at the same Nashville, Tennessee facility currently owned by the defendant. In 1986, the facility was owned by M. Cohen Iron and Metal, which eventually sold the facility to Steiner-Liff Metals Group, from whom the defendant acquired the facility in 1997. The defendant has been the plaintiff's employer since that time. For the entire time that the defendant has employed the plaintiff, the plaintiff's official job title has been "Welder," and his job has been to use welding techniques to build and repair metal objects. The plaintiff does not, however, draft or read the blueprints that are sometimes used to direct the building and repair process.[3]

Capps has worked at this same facility since 1995 and has overall less welding experience than the plaintiff. Capps has a high school diploma and trained to be a welder

---

[2] Since this controversy arose in July 2007, an additional welder has been hired at the defendant's Nashville facility. Also, the pay of the plaintiff and Capps has increased, but it remains undisputed that Capps still makes roughly three dollars per hour more than the plaintiff.

[3] In their briefing and discovery, the parties dispute whether plaintiff "fabricates" as well as welds. The plaintiff asserts that he is a "welder/fabricator" because, in addition to strictly welding, he "fabricates ... as needed." The plaintiff says "fabricating" is to "build ... from scratch ... [such that] [i]f they tear the side of a trailer off and you've got to rebuild it and that's adding on to it, and you fabricate the side and put it onto it." The defendant says that fabricating goes beyond merely building and involves drafting blueprints for a project, and then following those blueprints when actually building. Obtaining a precise definition of "fabricating" is not necessary here, as the court will simply consider the actual work done by all relevant parties.

through a course in high school. At the time Capps was hired, he had eleven years of professional welding experience, but he also had experience in drafting and reading blueprints. Until approximately May 2000, Capps' official title was "Welder," but, at that time, the defendant promoted Capps to the position of "Welder/Fabricator." At his deposition, Capps testified that the promotion did two things: (1) it gave him an incentive to stay with the defendant and not take another job, and (2) it recognized that, in addition to welding, he did a substantial amount of what he calls "fabricating," *i.e.*, drafting and reading blueprints and then building a structure or object, such as a catwalk, from those blueprints.[4] Capps estimates that he spends approximately 60 percent of his workday doing what he calls "fabricating." As noted above, at the time this controversy arose, Capps was paid $21.37 per hour, which is $2.91 more per hour than the plaintiff was paid.

In July 2007, the plaintiff was in the defendant's locker room and noticed Capps' pay stub had fallen out of Capps' locker. The plaintiff picked up the pay stub, examined it, and determined that Capps was making more money than he was. Shortly thereafter, the plaintiff asked his supervisor why Capps was making more money than he was, and his supervisor apparently told the plaintiff that he would get back to the plaintiff with an answer. The plaintiff did not quickly hear back from his supervisor. On August 2, 2007, the plaintiff's lawyer wrote a letter to the defendant's legal department demanding an explanation for the payment disparity within ten days or litigation would be pursued. On August 13, 2007, a representative from the

---

[4] There are apparently no other employees with the title "Welder/Fabricator" employed by the defendant.

defendant's human resources department wrote the plaintiff's lawyer, stating that the company had an "open door policy" for employees to address their concerns, but the defendant was not interested in discussing this matter with the plaintiff's lawyer. On September 4, 2007, the plaintiff filed this lawsuit in state court, alleging racial discrimination in the defendant's compensation scheme. (Docket No. 1 Ex 1.) The defendant removed this case from Tennessee state court on the basis of diversity jurisdiction, and, after several months of discovery, the defendant filed its motion for summary judgment on June 30, 2008.

## ANALYSIS

The plaintiff claims that he was subjected to discrimination on the basis of his race in violation of the Tennessee Human Rights Act, T.C.A. § 4-21-301 *et seq*. The defendant has moved for summary judgment on this claim. For the reasons discussed below, the defendant is entitled to a judgment as a matter of law, and the defendant's motion will be granted.

**I.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the

4

factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

### A. Racial Discrimination Claim

The plaintiff asserts a single claim of racial discrimination under the Tennessee Human Rights Act (THRA). The relevant section of the THRA states: "[i]t is a discriminatory practice for an employer to ... discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." T.C.A. § 4-21-401. A claim of discrimination under the THRA is analyzed under the now familiar burden-shifting framework that the U.S. Supreme Court established for analyzing Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006) ("The intent of the THRA is to provide for execution within Tennessee of the policies embodied in the federal civil rights statutes. ... Accordingly, an analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act."). Under the burden-shifting framework, where, as here, there is no direct evidence of discrimination, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp*, 411 U.S. at 802. If the plaintiff establishes his *prima facie* case, the defendant may offer a legitimate, non-discriminatory reason for the employment action, which the plaintiff may rebut with evidence that the explanation is pretextual. *Burdine*, 450 U.S. at 255-56. The burden to prove that he was a victim of intentional discrimination always remains with the plaintiff. *Id.*

#### 1. *Prima Facie* Case

To establish a *prima facie* case of discrimination in compensation under this framework,

6

the plaintiff must show (1) that he is a member of a protected class; (2) that he is paid less than an employee outside of his protected class; and (3) that he performs equal work to that of the better compensated employee. *Anderson v. Mead Johnson*, 910 F. Supp. 376, 384 (E.D. Tenn. 1996); *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981) (Equal Pay Act case stating that the burden-shifting analysis is identical for Equal Pay Act cases and Title VII cases). Here, neither side disputes that the plaintiff, as an African-American, is a member of a protected class under this framework. Nor do the parties dispute that the plaintiff is paid less than a co-worker, Bryan Capps, who is outside of the plaintiff's protected class. (Docket No. 16 at note 6.) Therefore, the only disputed point as to the plaintiff's *prima facie* case is whether the plaintiff and Capps perform equal work.

The analysis of whether two individuals perform "equal work" under this framework considers all relevant aspects of the particular employment situation. *See Odomes*, 653 F.2d at 250; *Lacey v. Robertson*, No. 99-1424, 2000 WL 876491, *2 (6th Cir. 2000). Therefore factors such as the skill, effort, and responsibility required for the respective jobs, along with the respective jobs' working conditions and the level of experience and education that each employee brings to his or her position may all be fairly considered in the analysis. *Id.*; *Anderson*, 910 F. Supp. at 384. Before making the determination that the two employees perform "equal work," the court should ensure that, between the two jobs, there is "substantial equality of skill, effort, responsibility and working conditions." *See Odomes*, 653 F.2d at 250.

It is clear to the court that the plaintiff and Capps do not perform "equal work." In its summary judgment brief, supported by affidavits and deposition testimony, the defendant

7

provided numerous key differences between the work done by Capps and the work done by the plaintiff, including: (1) that Capps has experience as a welding supervisor; (2) that Capps routinely supervises and corrects the work done by others, including the work done by the plaintiff; and (3) that Capps drafts blueprints and then builds parts based on those blueprints.[5] (Docket No. 16 at 11; Docket Nos. 14-15 at 2.)

While all of these distinctions are important, the last is the most important. Capps testified at his deposition that, prior to his employment at the Nashville facility, he learned to read and draft blueprints, and, while employed by the defendant, a substantial part of his job has been to draft and read blueprints for parts and then create those parts. (Docket No. 17 Ex. 3 at 7, 14-15, 25-27.) The plaintiff, on the other hand, admitted that, while he rebuilds broken objects (such as the side of a trailer that has been torn off), his job does not require him to read or draft blueprints. (Docket No. 17 Ex. 2 at 33, 45; Docket No. 17 Ex. 1 at 3-4.) To the court, this distinction creates a fundamental difference in the level of sophistication in the work Capps

---

[5] The plaintiff encourages the court to ignore the affidavits of the past and present supervisors of Capps and the plaintiff because, the plaintiff argues, they are "self serving," "identical," not entirely based on personal knowledge, and not "sworn or certified." (Docket No.17 Ex. 1 at 8.) Affidavits are sufficiently sworn if they are signed, dated, and declare, under penalty of perjury, that the statements are true and correct, and these affidavits meet those requirements. *Peters v. Lincoln Elec.*, 285 F.3d 456, 475 (6th Cir. 2002) (citing 28 U.S.C. 1746(2)). The plaintiff is correct that the affidavits do not clearly delineate which statements are based on personal knowledge and which are not, as the affiants only say that the "statements herein are based upon facts within my own personal knowledge and my review of the documents" related to this lawsuit. (Docket No. 14 at 1; Docket No. 15 at 1.) The issue is of no great moment because the court is only relying on a statement in the affidavits that is clearly based on personal knowledge, *i.e.*, the supervisors' statement that they regularly ask(ed) Capps to review and fix the work of other welders, including the plaintiff. (*Id.* at 2.) The plaintiff has given the court no non-speculative reason to doubt the credibility of this statement, and testimony of identical substance is also in the deposition of Capps. (Docket No. 17 Ex. 3 at 26.).

8

performs versus the work the plaintiff performs, such that the work is not equal.

The plaintiff simply ignores these distinctions and argues that the only reason the plaintiff, with more welding experience and more seniority, could possibly be making less money than Capps is because of racial discrimination. (Docket No. 17 at 6.) As to the key distinction that Capps works with blueprints and the plaintiff does not, the plaintiff's only response is to doggedly argue that Capps and the plaintiff have "substantially the same duties" and to make unfounded challenges to the credibility of Capps. (*Id.*; Docket No. 17 Ex. 1 at 6-8.) Other than saying that the credibility of Capps is an "issue," the plaintiff provides no evidence that there is reason to doubt that Capps testified truthfully at his deposition.[6] Conclusory allegations such as these are "wholly insufficient evidence" to defeat summary judgment. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).

Because of the differences in the type of work performed by Capps and the type of work performed by the plaintiff, it is clear to the court that the work these two individuals perform is not "equal." Therefore, as a matter of law, the plaintiff has failed to establish his *prima facie* case of racial discrimination as to compensation.

### 2. Non-Discriminatory Explanation and Evidence of Pretext

The plaintiff's failure to establish his *prima facie* case is fatal to his claim of racial discrimination. But even assuming that the plaintiff could somehow show that the work he and Capps perform is equal, the defendant would still be entitled to judgment as a matter of law

---

[6] Further, the attack on Capps' credibility seems disingenuous in light of the fact that the plaintiff cites Capps' deposition testimony to advance his pretext arguments. (Docket No. 17 at 9-10.)

9

because the defendant has offered a legitimate, non-discriminatory explanation for the differing treatment, and the plaintiff cannot demonstrate that that explanation is pretextual. *Burdine*, 450 U.S. at 255-56.

The defendant's explanation for the disparity in pay would have satisfied the requirement that it articulate a legitimate, non-discriminatory reason for the differing treatment. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) ("[o]nce the *prima facie* case is made, a defendant may offer any legitimate, non-discriminatory reason for the employment action. ... It is important to note that the defendant need not prove a nondiscriminatory reason for [the differing treatment], but need merely articulate a valid rationale.") As alluded to above, the defendant explains that the plaintiff and Capps are paid differently because of a business judgment that "Mr. Capps has more technical skills, abilities, duties, responsibilities and experience as a Welder/Fabricator than Plaintiff does as a Welder. ... Plaintiff and Mr. Capps do not perform the same job and that - and that alone - is why they are paid differently." (Docket No. 16 at 12.) The defendant would have easily satisfied its burden to articulate a legitimate, non-discriminatory reason for the pay disparity.

The plaintiff has failed to demonstrate pretext. As the plaintiff points out, "[a]n employee may demonstrate that an employer's proffered, non-discriminatory reasons for an adverse employment action are pretextual by revealing the weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's explanation." *Wilson v. Rubin*, 104 S.W. 3d 39, 50-51 (Tenn. Ct. App. 2002). Three common ways to demonstrate pretext are by showing (1) that the employer's explanation for the differing treatment has no

10

basis in fact; (2) that the proffered reason did not actually motivate the employment decision; or (3) that the proffered reasons were insufficient to motivate the action. *Id.*

The plaintiff makes three attempts to demonstrate pretext, none of which actually challenges the defendant's core argument that Capps is paid more because he does more complicated work. First, the plaintiff objects to one of many pay disparity explanations offered, in list form, by the defendant in its summary judgment brief. The defendant stated that "Mr. Capps had eleven years of welding work experience when he began working at the Nashville facility; Plaintiff had only eight." (Docket No. 16 at 10.) The plaintiff argues that this statement is misleading because the plaintiff is overall more experienced in welding than Capps and had more experience in welding than Capps did when Capps started his employment at the Nashville facility in 1995. (Docket No. 17 at 7.) The plaintiff suggests that, "[t]o imply that Mr. Capps had more years of welding experience is so deceiving as to allow the trier of fact to doubt everything said by the employer - *falsus in uno, falsus in omnibus.*" (*Id.*) The defendant's statement is not "deceiving"; the defendant is merely stating that Capps' initial pay was higher than the plaintiff's initial pay because Capps started working for the defendant's predecessor with more experience, and, as the defendant states, "[i]nitial pay has an impact upon future pay." (Docket No. 18 at note 4.) This pretext argument fails.

Second, the plaintiff asserts that the differing job titles are really a pretext for discrimination, arguing that the white employee was given a "fancier" title to justify his higher pay, while the minority employee was "stuck" with a less fancy title and lower pay.[7] (*Id*. at 8.)

---

[7] The plaintiff argues that this pattern extends outside the defendant's Nashville facility to the defendant's Chattanooga location, where Charles Layne, a white person hired on December

11

As Capps' promotion occurred over eight years ago, a clear, formal explanation for the promotion does not appear readily available. But the plaintiff cites Capps' deposition testimony in which he testified that he was promoted to the newly created classification of welder/fabricator because "they was concerned that I was gonna leave to go to another job, and they wanted to give me more money and the only way they could is to put me in a different classification, *which I was already fabricating anyways*." (*Id.* at 9) (emphasis added). This testimony indicates that Capps' promotion was motivated by the defendant's concerns that Capps might otherwise leave the company and rationalized by the defendant's desire to recognize that Capps had been performing more sophisticated work all along.[8] The record shows absolutely no evidence that Capps was given a different title based on his race.

Finally, the plaintiff argues that the defendant's response to the plaintiff's initial request for information about the pay disparity indicates pretext. As the plaintiff states, "[w]hen Mr. Lyons discovered the disparate pay, he asked his supervisor to explain the job classification and pay difference. If there actually was a difference in the jobs ... it would have been a simple

---

5, 2005, is paid $14 per hour and Daniel Rodriguez, an Hispanic person also hired on December 5, 2005, is paid $13.90 per hour. (Docket No. 17 Ex. 4.) In the defendant's files Layne is classified as a "Welder" and Rodriguez is classified as a "Welder B." (*Id.*) The plaintiff offers no further evidence regarding the experience or qualifications of Layne and Rodriguez. For the court to find this minimal pay disparity between workers with different job classifications evidence of pretext in this matter would be to engage in pure speculation.

[8] Further, the wage histories for the plaintiff and Capps that the defendant provided in discovery and that the plaintiff provides in support of his summary judgment response, show that the wage disparity between the plaintiff and Capps has grown slowly over time, not in conjunction with Capps' promotion. In 1997, the year that the defendant became the plaintiff's employer, the plaintiff was making $1 less per hour than Capps. Since the start of 1998, both Capps and the plaintiff have received eleven raises (essentially one per year), which has slowly and steadily expanded the pay disparity by another $1.91 an hour. (Docket No. 17 Ex. 4.)

matter to explain. However, if it is pretext, it would be a better strategy to avoid the question." (Docket No. 17 at 11.) To call this evidence of pretext is pure speculation. Within weeks of this conversation, the plaintiff had his lawyer contact the defendant, backs got raised, and litigation ensued.

### 3. Summary

At the plaintiff's deposition, he was asked why he thought Capps was paid more than he was, and the plaintiff said it was because "[h]e's white; I'm black." (Docket No. 17 Ex. 2 at 40.) The plaintiff never advanced further than this point in his racial discrimination claim, failing to offer evidence that Capps and the plaintiff are paid differently because they are of different races. Not only are the jobs held by Capps and the plaintiff not equal, but the plaintiff was unable to generate evidence of pretext. Therefore the plaintiff's claim fails as a matter of law.

## CONCLUSION

The plaintiff has failed to raise a genuine issue of material fact as to whether the defendant discriminated against him on the basis of his race in regards to his compensation. As such, the defendant's Motion for Summary Judgment will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

13